UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EDWIN LOPEZ, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 17-0133 (ABJ) |
| NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, | ) | |
| Defendant, | ) | |
| DAVID S. FERRIERO, and his Successors, in their official Capacity as the Archivist Of the United States | ) | |
| Defendant, | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Edwin Lopez brought this action under three statutes: the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a, and the President John F. Kennedy Assassination Records Collection Act of 1992 ("JFK Records Act"), 44 U.S.C. § 2107. He seeks to compel the National Archives and Records Administration ("NARA"); David S. Ferriero, sued

in his official capacity as the Archivist of the United States; and the Central Intelligence Agency ("CIA"), to produce various documents that relate to him. Am. Compl. [Dkt. # 18].[1]

Pending before the Court is defendants' renewed motion for judgment on the pleadings and plaintiff's cross-motion for summary judgment. For the reasons that follow, the Court will grant defendants' motion for judgment on the pleadings and deny plaintiff's motion.

## BACKGROUND

The Court accepts as true the following facts set out in plaintiff's amended complaint for the purposes of resolving the pending motion for judgment on the pleadings.[2] On December 19, 2014, plaintiff submitted a request for records pursuant to FOIA, the Privacy Act, and the JFK Records Act with NARA. Am. Compl. ¶ 8; Ex. 1 to Am. Compl. [Dkt. # 25-1] ("Request").

Plaintiff sought production of the following four items:

---

[1] Plaintiff filed his original complaint on January 19, 2017. Compl. [Dkt. # 1]. Defendants filed an answer on March, 27, 2017, followed by a motion for judgment on the pleadings. Defs.' Answer [Dkt. # 8]; Defs.' Mot. for J. on the Pleadings [Dkt. # 11]. Plaintiff responded to defendants' motion by cross-moving for summary judgment, but he also filed a motion for leave to amend his complaint. Pl.'s Resp. to Defs.' Mot. for J. on the Pleadings & in Supp. of Pl.'s Cross-Mot. for Summ. J. [Dkt. # 14]; Pl.'s Mot. for Leave to File an Am. Compl. for Injunctive Relief [Dkt. # 13]. The Court granted plaintiff's motion for leave to amend. Min. Order (June 1, 2017). In light of the new complaint, the Court denied both parties' pending motions as moot, and ordered defendants to file a renewed motion for judgment on the pleadings. *Id.* ("[D]efendants' motion for judgment on the pleadings is DENIED AS MOOT, and plaintiff's response to defendant's [*sic*] judgment on the pleadings and in support of plaintiff's cross-motion for summary judgment is also DENIED AS MOOT. Defendants are ordered to file any renewed motion for judgment on the pleadings by June 12, 2017. Plaintiff must file any opposition and/or cross-motion by July 3, 2017."). The parties proceeded according to that schedule.

[2] When analyzing a motion for judgment on the pleadings, the Court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992), quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988); *see also Thompson v. Dist. of Columbia*, 428 F.3d 283, 284 (D.C. Cir. 2005) ("As we must in reviewing a judgment on the pleadings, we view the complaint's allegations in the light most favorable to the plaintiff."); *Robinson v. Dist. of Columbia*, 403 F. Supp. 2d 39, 47 (D.D.C. 2005) ("[U]nder [a] Rule 12(c) motion, the Court assumes the veracity of all factual allegations set forth in [p]laintiff's [c]omplaint.").

1. The 40-page document which is described by RIF #104-10175-10085 (hereafter referred to as "the Ed Lopez file." [*sic*];

2. Any record reflecting a vote by the Assassination Records Review Board (ARRB) to designating [*sic*] the Lopez file as "NBR" ("Not Believed Relevant") or similar status or determining that its disclosure should be withheld for a particular period of time, including until 2017;

3. Any record of the CIA or any other agency reflecting the belief that the Lopez file should or might be given "NBR" status or that its disclosure should be postponed for any period of time, including until the year 2017; and

4. Any record reflecting that the disclosure of the Lopez file should be postponed in whole or in part for any period of time, including until 2017, was transmitted to, and published in, the Federal Register in accordance with the procedures of the JFK Act.

Request; *see also* Am. Compl. ¶ 8.

On January 7, 2015, NARA sent plaintiff a letter acknowledging that it had received the request on December 23, 2014, and assigned it the request reference number NW 44935. Am. Compl. ¶ 9; Ex. 2 to Am. Compl. [Dkt. # 25-1]. On January 26, 2015, Martha Wagner Murphy, Chief of the Special Access and FOIA staff to NARA, informed Joseph W. Lambert, Director of the Information Management Services at CIA, of the request and forwarded a copy. Am. Compl. ¶ 10; Ex. 3 to Am. Compl. [Dkt. # 25-1] ("Ex. 3"). She asked that he inform NARA of the CIA's determination and any "sanitizing instructions" since "a full-text copy of the requested document is in [CIA's] files." Am. Compl. ¶ 10; Ex. 3.

On May 27, 2015, Michael Lavergne of the CIA responded to Murphy, and he advised her that CIA had located and reviewed the Lopez File and had determined that "it is currently and properly classified and must be denied in its entirety on the basis of FOIA exemptions (b)(1) [classified records] and (b)(3) [records exempted by other statutes]." Am. Compl. ¶ 11; Ex. 4 to Am. Compl. [Dkt. # 25-1] ("Ex. 4"). The CIA cited to section 6 of the Central Intelligence Agency

Act of 1949, and section 102A(i)(1) of the National Security Act of 1947 to support the use of the exemptions. Am. Compl. ¶ 11; Ex. 4.

By letter dated June 9, 2015, NARA informed plaintiff of the CIA determination to withhold the Lopez File in full pursuant to the two FOIA exemptions. Am. Compl. ¶ 12; Ex. 5 to Am. Compl. [Dkt. # 25-1] ("Ex. 5"). NARA also advised plaintiff that a search of the closed records of the Assassination Records Review Board had been made "and no information was found" responsive to the remainder of his request. Am. Compl. ¶¶ 12–13; Ex. 5. Finally, NARA advised plaintiff that he had the right to administratively appeal the decision within sixty days of the date of the letter. *See* Ex. 5.[3] Plaintiff alleges that after he received NARA's letter, there were no further communications with NARA or CIA. Am. Compl. ¶ 14.

On June 1, 2017, plaintiff filed an amended complaint asserting claims under FOIA (Count I), the Privacy Act (Count II), and the JFK Records Act (Count III). Am. Compl. On June 12, 2017, defendants renewed their motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Renewed Mot. for J. on the Pleadings [Dkt. # 19] ("Defs.' Mot."); Mem. of P. & A. in Supp. of Defs.' Mot. [Dkt. # 19] ("Defs.' Mem."). Plaintiff opposed the motion and also filed a cross-motion for summary judgment on July 3, 2017. Pl.'s Resp. to Defs.' Mot. & Pl.'s Renewed Cross-Mot. for Summ. J. [Dkt. ## 20–21] ("Pl.'s Opp. & Cross-Mot."); Mem. of

---

3   Generally, the Court is not to consider matters outside the pleadings, per Rule 12(d), but the letter was attached to the complaint, and the Court may consider any document either attached to or incorporated by reference in the complaint. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

Opposing P. & A. in Resp. to Defs.' Mot. & in Supp. of Pl.'s Opp. & Cross-Mot.) [Dkt. ## 20–21] ("Pl.'s Opp. & Cross-Mem.").[4] The motions have been fully briefed.[5]

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) authorizes a party to move for judgment on the pleadings at any time "after the pleadings are closed." Fed. R. Civ. P. 12(c).[6] Parties are entitled to pretrial judgment on the pleadings "if the moving party demonstrates that no material fact is in dispute and that it is entitled to judgment as a matter of law." *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1370 (D.C. Cir. 2008), quoting *Peters*, 966 F.2d at 1485. When analyzing a motion for judgment on the pleadings, the Court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Peters*, 966 F.2d at 1485, quoting *Jablonski*, 863 F.2d at 290–91; *see also Thompson v. Dist. of*

---

4   In his cross-motion for summary judgment, plaintiff argues that defendants' declarations do not support proper withholdings under FOIA Exemptions (b)(1) and (b)(3). Pl.'s Opp. & Cross-Mem. at 14. Because the Court will grant defendants' motion on other grounds, the Court will not reach the merits of plaintiff's cross-motion.

5   Defendants filed a reply and opposition to plaintiff's cross-motion on July 24, 2017. Defs.' Reply to Pl.'s Opp. & Cross-Mot. & Defs.' Opp. to Pl.'s Cross-Mot. [Dkt. ## 22–23] ("Defs.' Reply"). On August 7, 2017, plaintiff filed a cross-reply. Pl.'s Reply to Defs.' Reply [Dkt. # 24] ("Pl.'s Cross-Reply").

6   Pleadings are closed for Rule 12(c) purposes when a complaint and an answer have been filed. *See* Fed. R. Civ. P. 7(a); *Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 60 (D.D.C. 2007) ("Pleadings are closed within the meaning of Rule 12(c) if no counter or cross claims are at issue when a complaint and an answer have been filed."). Here, pursuant to the Court's order, *see* Min. Order (June 1, 2017), defendants filed a renewed motion for judgment on the pleadings under Rule 12(c) in response to the amended complaint without first filing an amended answer. Although a Rule 12(c) motion ordinarily requires a new answer, or a stipulation that the original answer stands, both parties have proceeded as if the original answer remains in effect. Under these circumstances, "[t]he fact that both parties presented this motion as though the original answer was responsive to the amended complaint[ ] is equivalent to such an implied stipulation or a tacit acquiescence." *Deming v. Turner*, 63 F. Supp. 220, 222 (D.D.C. 1945). Further, defendants informed the Court that they did not file an amended answer because "it would not impact any of [d]efendants' arguments." Defs.' Reply at 4 n.1. Therefore, the Court will treat the original answer as if it is responsive to the amended complaint for purposes of defendants' Rule 12(c) motion.

5

*Columbia*, 428 F.3d 283, 284 (D.C. Cir. 2005) ("As we must in reviewing a judgment on the pleadings, we view the complaint's allegations in the light most favorable to the plaintiff.").

While there are opinions in this district that state that the standards of review between a Rule 12(b)(6) motion and a Rule 12(c) motion are "essentially the same" or "virtually identical," *see, e.g.*, *Nat'l Shopmen Pension Fund v. Disa*, 583 F. Supp. 2d 95, 99 (D.D.C. 2008), citing *Plain v. AT & T Corp.*, 424 F. Supp. 2d 11, 20 n.11 (D.D.C. 2006); *Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 58 (D.D.C. 2007); *Jung v. Ass'n of Am. Med. Colleges*, 339 F. Supp. 2d 26, 35–36 (D.D.C. 2004), the standard set out in the *Schuler* case by the D.C. Circuit comes closer to a summary judgment type of determination.

Wright's Federal Practice and Procedure makes the same observation, noting that a 12(c) motion asks the Court to address the merits of the parties' claims and defenses and not procedural barriers or pleading deficiencies. 5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1369 (3d ed. 2017) (commenting that the appropriate standard of review for a Rule 12(c) motion is more similar to a Rule 56 motion for summary judgment, except that the Court may only consider the contents of the pleadings); *see also Jones v. Dufek,* 830 F.3d 523, 528 (D.C. Cir. 2016) ("The district court properly resolved these questions as a matter of law on a motion under Rule

12(c)."), citing *Alexander v. City of Chi.*, 994 F.2d 333, 336 (7th Cir. 1993) ("[T]he standard courts apply for summary judgment and for judgment on the pleadings 'appears to be identical.'").[7]

If on a Rule 12(b)(6) or 12(c) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993) (applying the same test when converting a Rule 12(b)(6) motion to one for summary judgment). But the "parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The Court has the discretion to decide if it will convert a motion for judgment on the pleadings to one for summary judgment. *See Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003) (noting that the failure to comply with the procedures to convert a motion to dismiss to one for summary judgment is evaluated under an "abuse of discretion" standard); *Flynn v. Tiede-Zoeller, Inc.*, 412 F. Supp. 2d 46, 50 (D.D.C. 2006) ("The decision to convert a motion to dismiss into a motion for summary judgement, however, is committed to the sound discretion of the trial court.").

In this case, the parties have submitted declarations and other exhibits in support of, and in opposition to, the pending motions. The Court may consider certain exhibits, such as the Request

---

[7] *See also Landmark Am. Ins. Co. v. VO Remarketing Corp.*, 619 F. App'x 705, 708 (10th Cir. 2015) ("Granting a motion for judgment on the pleadings requires the movant to establish an absence of any issue of material fact and entitlement to judgment as a matter of law."); *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008) ("A grant of judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law.") (internal quotation marks omitted); *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 259 (3d Cir. 2008) ("[Rule 12(c)] [j]udgment will only be granted where the moving party clearly establishes there are no material issues of fact, and that he or she is entitled to judgment as a matter of law."); *Nat'l Fid. Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987) ("A motion for judgment on the pleadings may be granted only if the moving party clearly establishes that no material issue of fact remains to be resolved and that he or she is entitled to judgment as a matter of law.") (internal citation omitted).

itself, without converting the motion for judgment on the pleadings to one for summary judgment since those records either attached to, or incorporated by reference in, the complaint itself. *See St. Francis Xavier Parochial Sch.*, 117 F.3d at 624. However, since the Court will consider the declarations attached to defendants' motion for judgment on the pleadings, the Court is required to treat the motion as if it were a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). And because plaintiff had a full opportunity to oppose the motion, and treated it as a Rule 56 motion himself by submitting a cross-motion supported by a statement of facts and a declaration, as well as an opposition, the Court concludes that the parties have had an opportunity to present all the material pertinent to the motion, and that it is fair to both parties to convert defendants' motion to one for summary judgment. *See Hollis v. U.S. Dep't of the Army*, 856 F.2d 1541, 1544 (D.C. Cir. 1988); *Tele-Communications of Key West, Inc. v. United States*, 757 F.2d 1330, 1334 (D.C. Cir. 1985) ("[T]he reviewing court must assure itself that summary judgment treatment would be fair to both parties in that the procedural requirements of the applicable rules were observed.").

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

**ANALYSIS**

**I.	The Court will grant defendants' motion as to plaintiff's FOIA claims because he has not exhausted his administrative remedies.**

"Exhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003), quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990); *see also* 5 U.S.C. § 552(a)(6). However, absent an express statutory provision to the contrary, failure to exhaust is not "an automatic bar to judicial review." *Oglesby*, 920 F.2d at 61.

It is true that "the exhaustion requirement is not jurisdictional because the FOIA does not unequivocally make it so." *Hidalgo*, 344 F.3d at 1258; *see I.A.M. Nat'l Pension Fund Ben. Plan C. v. Stockton TRI Indus.*, 727 F.2d 1204, 1208 (D.C. Cir. 1984) ("Only when Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision . . . has the Supreme Court held that exhaustion is a jurisdictional prerequisite."). However, "as a jurisprudential doctrine, failure to exhaust precludes judicial review if 'the purposes of exhaustion' and the 'particular administrative scheme' support such a

9

bar." *Hidalgo*, 344 F.3d at 1258–59, quoting *Oglesby*, 920 F.2d at 61. And this Circuit has consistently held that FOIA's administrative scheme supports such a bar, and thus "requires each requestor to exhaust administrative remedies" prior to filing suit. *Hidalgo*, 344 F.3d at 1259, citing *Sinito v. DOJ*, 176 F.3d 512, 516 (D.C. Cir. 1999); *see also Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 182 (D.C. Cir. 2013) ("[A] FOIA requester must exhaust administrative appeal remedies before seeking judicial redress.").

Under the statute, the agency has twenty days to determine if it will comply with the request, and it must notify the requestor of this decision. 5 U.S.C. § 552(a)(6)(A)(i). The agency's response should include its "determination of whether or not to comply with the request[,] the reasons for its decision[,]" and if the decision is adverse, notice of the requestor's right "to appeal to the head of the agency." *Oglesby*, 920 F.2d at 65. Once the agency responds, "the FOIA requestor must appeal to the head of the agency" before bringing suit. *Id.* The agency must then make a determination on the appeal within twenty days. 5 U.S.C. § 552(a)(6)(A)(ii).

Importantly, a requestor "shall be deemed to have exhausted his administrative remedies with respect to [a] request if the agency fails to comply with the applicable time limit provisions," and the requestor files suit. 5 U.S.C. § 552(a)(6)(C)(i). But, "if the agency responds to the FOIA request before the requester files suit, the [twenty-day] constructive exhaustion provision . . . no longer applies; actual exhaustion of administrative remedies is required." *Oglesby*, 920 F.2d at 61.

A. **Plaintiff did not exhaust his administrative remedies as to defendant NARA.**

Here, there is no dispute that plaintiff filed this lawsuit after NARA responded to his FOIA request but before he had appealed the agency's determination. Although plaintiff makes the conclusory allegation in his complaint that he has "exhausted his administrative remedies," *see*

Am. Compl. ¶ 15, he also acknowledges that after he received NARA's determination of June 9, 2015, which notified him of his right to appeal, "no further communications have been exchanged." *Id.* ¶ 14. Further, NARA's declarant averred that "NARA has no record of ever receiving an appeal," *see* Decl. of Joseph A. Scanlon [Dkt. # 19-2] ¶ 10, and plaintiff has not provided the Court with any other evidence to support his claim that he appealed NARA's determination.

Plaintiff argues that he constructively exhausted his administrative remedies since the agency did not respond to his request within the twenty-day statutory period. Pl.'s Opp. & Cross-Mem. at 7–8. However, the special right to immediate judicial review that arises from the lack of a timely response is not available if an agency responds to a request at any time before the requestor files suit. *See Oglesby*, 920 F.2d at 61, 66–67, 70–71. That is what happened here.[8]

To permit plaintiff to ignore NARA's directive "would cut off the agency's power to correct or rethink initial misjudgments or errors," *Oglesby*, 920 F.2d at 64, and frustrate the policies underlying the exhaustion requirement. *See Dettmann v. DOJ*, 802 F.2d 1472, 1476 n.8 (D.C. Cir. 1986) (applying exhaustion requirement because "it would be both contrary to 'orderly procedure and good administration' and unfair 'to those who are engaged in the tasks of administration' to decide an issue which the [agency] never had a fair opportunity to resolve prior to being ushered into litigation."), quoting *United States v. Tucker Truck Lines*, 344 U.S. 33, 36–37 (1952).

---

8      Plaintiff insists that *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180 (D.C. Cir. 2013) ("CREW") has "effectively overruled and superseded *Oglesby*." Pl.'s Opp. & Cross-Mem. at 7. The Court disagrees. *CREW* dealt with a FOIA requester who brought suit *prior* to receiving a determination from the agency, while *Oglesby* concerned a requestor who – like here – brought suit *after* an agency's tardy response to a FOIA request. The option for immediate judicial review "lasts only up to the point that an agency actually responds. Once the agency has responded to the request, the petitioner may no longer exercise his option to go to court immediately." *Oglesby*, 920 F.2d at 61.

11

Because plaintiff has failed to exhaust his administrative remedies, NARA is entitled to summary judgment on plaintiff's FOIA claim in Count I.

**B.     Plaintiff did not exhaust his administrative remedies as to defendant CIA.**

The CIA argues that the FOIA claim against it should be dismissed because plaintiff never sent it a request. Defs.' Mem. at 6. The Court agrees.

The Court's jurisdiction under FOIA is dependent upon a showing that an agency improperly withheld agency records. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980); *see also* 5 U.S.C. § 552(a)(4)(B). But an agency's obligation to disclose records "is not triggered . . . until a proper request has been received." *Pickering-George v. Registration Unit, DEA/DOJ*, 553 F. Supp. 2d 3, 5 (D.D.C. 2008); *see also* 5 U.S.C. § 552(a)(6)(A)(i) (requiring an agency to "determine within 20 days . . . after *receipt*" of a request "whether to comply" with it and to notify the requester accordingly) (emphasis added).

A proper FOIA request must "reasonably describe[ ]" the records sought and must comply with the agency's published procedures, including the agency's schedule of fees. 5 U.S.C. § 552(a)(3)(A). "The failure to comply with an agency's FOIA regulations is the equivalent of a failure to exhaust." *West v. Jackson*, 448 F.Supp.2d 207, 211–12 (D.D.C. 2006), citing *Ivey v. Snow*, No. 05-1095, 2006 WL 2051339, at *3 (D.D.C. July 20, 2006). Accordingly, if there is no showing that the agency received the request pursuant to the agency's published procedures, the agency has no obligation to respond to it. *See Banks v. Lappin*, 539 F. Supp. 2d

228, 235 (D.D.C. 2008) (granting judgment as a matter of law to defendants because there was no evidence they had received the request at issue).

Here, there is no allegation, let alone evidence, that plaintiff submitted a FOIA request to CIA.[9] According to the complaint, plaintiff submitted his FOIA request to NARA. *See* Am. Compl. ¶ 8. And he admitted as much in his opposition and cross-motion. *See* Pl.'s Opp. & Cross-Mem. at 12 (stating that "the FOIA request of December 19, 2014, was not sent directly to the CIA by the [p]laintiff," and that "[i]t was sent to them *by NARA*") (emphasis added). Further, CIA's declarant confirmed that the agency has no record of receiving the December 19, 2014 request, or any other request that calls for the four items identified in plaintiff's complaint. Decl. of Antoinette B. Shiner [Dkt. # 19-1] 11. Plaintiff has presented no evidence to the contrary.

Plaintiff argues that "the CIA had actual notice of the request" after NARA sent it a copy, Pl.'s Opp. & Cross-Mem. at 12, and that because exhaustion "is not jurisdictional," the Court should "either waive the formal requirements in view of the actual facts of the case or remand the request to the CIA for actual exhaustion." *Id.* Plaintiff cites no case law supporting his theory that "actual notice" may serve as an alternative to properly sending a request to an agency, and his approach is contrary to binding Circuit authority that makes exhaustion of administrative remedies

---

9     To submit a proper FOIA request to CIA, one must submit the request to CIA's Information and Privacy Coordinator. *See* 32 C.F.R. §§ 1900.03, 1900.11.

"a mandatory prerequisite to a lawsuit under FOIA." *Wilbur v. CIA*, 355 F.3d 675, 676 (D.C. Cir. 2004).[10]

Since it is undisputed that plaintiff's request was not sent through the proper channels to CIA, the agency was not required to respond, and plaintiff did not exhaust his administrative remedies as to that agency. *See Pickering-George*, 553 F. Supp. 2d at 5 ("In the absence of any evidence that plaintiff exhausted his administrative remedies by properly submitting a FOIA request to DEA, the Court concludes that defendant is entitled to judgment as a matter of law.").

Therefore, CIA is entitled to summary judgment on the FOIA count.

## II. The Court does not have jurisdiction over plaintiff's Privacy Act claims because plaintiff has not exhausted his administrative remedies.

"The Privacy Act regulates the 'collection, maintenance, use, and dissemination of information' about individuals by federal agencies." *Wilson v. Libby*, 535 F.3d 697, 707 (D.C. Cir. 2008) (internal quotation marks omitted), quoting *Doe v. Chao*, 540 U.S. 614, 618 (2004). If an agency "refuses to comply with an individual's request" to "gain access to his record or to any information pertaining to him which is contained in the [record] system," the individual "may bring a civil action against the agency, and the district courts of United States shall have jurisdiction." 5 U.S.C. §§ 552a(d), (g)(1).

---

10  These sorts of referrals occur often, and are contemplated by the FOIA statute. *See* 5 U.S.C. § 552(a)(6)(B)(iii)(III) (permitting consultation "with another agency having a substantial interest in the determination of the request"); *see also McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983) (setting forth a test to evaluate the adequacy of referrals, and observing that when an agency receives a FOIA request for records in its possession, "it must take responsibility for processing the request" even if the documents originated elsewhere). Thus, NARA remained the responsible agency, even after it engaged the CIA in the search. And, in any event, NARA informed plaintiff of CIA's response to its inquiry, and it was plaintiff who failed to take further action. So there would be no good cause to remand the case to the agency and give plaintiff a second bite at the apple.

However, this civil remedy is not available unless a plaintiff has exhausted his administrative remedies. *See* 5 U.S.C. § 552a(g)(1); *Haase v. Sessions*, 893 F.2d 370, 373 (D.C. Cir. 1990) (finding a cause of action under the Privacy Act to be subject to administrative exhaustion requirement). Indeed, failure to exhaust administrative remedies under the Privacy Act is a jurisdictional deficiency because exhaustion is required by statute. *See* 5 U.S.C. § 552a(d)(1)–(3); *Haase*, 893 F.2d at 373–74 (holding that causes of action for amendment of records and for access to records incorporate exhaustion requirements); *Mulhern v. Gates*, 525 F.Supp.2d 174, 183 (D.D.C. 2007) ("Premature Privacy Act suits [for improperly withholding documents] are dismissed for lack of subject matter jurisdiction.").[11]

Because the exhaustion requirement under the Privacy Act is jurisdictional, a court may dismiss a claim for failure to exhaust administrative remedies *sua sponte*. Fed. R. Civ. P. 12(h)(3); *see Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."); *Doe ex rel. Fein v. Dist. of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996) (observing that because subject-matter jurisdiction cannot be waived, a court is "obliged to address it *sua sponte*" when the parties have failed to do so), citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Even though defendants do not raise this issue, the Court must determine if it has jurisdiction over plaintiff's Privacy Act claims.

---

11   Other Circuits have held that failure to exhaust administrative remedies is a jurisdictional bar to *amendment* suits under 5 U.S.C. § 552(g)(1)(A), and only a jurisprudential consideration in *access* suits under 5 U.S.C. § 552(g)(1)(B). *See, e.g.*, *Taylor v. U.S. Treasury Dep't*, 127 F.3d 470, 475 (5th Cir. 1997); *see also Wadhwa v. Dep't of Veterans Affairs*, 342 F. App'x 860, 862–63 (3d Cir. 2009).

15

To properly exhaust administrative remedies under the Privacy Act, a plaintiff must submit a Privacy Act request to the agency and seek review within the agency under the agency's promulgated procedures. *See* 5 U.S.C. §§ 552a(d)(1)–(3), (e)–(g)(1). After a review of plaintiff's amended complaint, plaintiff's Privacy Act request, *see* Request, and NARA's letter dated June 9, 2015, *see* Ex. 5, and in light of the Court's analysis above, the Court concludes that plaintiff has failed to exhaust his administrative remedies as to each defendant. Plaintiff never internally appealed NARA's determination, and plaintiff never sent a proper request to CIA. Therefore, the Court lacks subject-matter jurisdiction over plaintiff's Privacy Act claims in Count II, and it will dismiss those claims against both defendants.

**III. The Court will dismiss plaintiff's claims under the JFK Records Act because it does not provide a private cause of action.**

In the complaint, plaintiff alleges that defendants have not followed the procedures established in JFK Records Act, and that "the Lopez file is illegally and improperly withheld under the provisions of the JFK Records Act." Am. Compl. ¶¶ 22–24. Plaintiff then asks the Court to "order the defendants [to] fully comply with the JFK Records Act in regard to the Lopez file." *Id.* at 6.

Congress enacted the JFK Records Act in order to establish a timetable and a procedure for the disclosure of records concerning the assassination of President John F. Kennedy. *See* President John F. Kennedy Assassination Records Collection Act of 1992, Pub. L. No. 102-526, 106 Stat. 3443 (1992) ("JFK Records Act") § 2; *see also Morley v. CIA*, 508 F.3d 1108, 1115 (D.C. Cir. 2007) (describing the purposes and scheme of the JFK Records Act). The Act requires that all assassination records be transmitted to NARA to comprise its JFK Assassination Records Collection. JFK Records Act § 4. The Act also created the Assassination Records Review Board ("ARRB") to determine whether agency documents constitute assassination records, and to render

decisions on whether certain records qualify for postponement of disclosure. *Id.* § 7(i). In 1998, upon expiration of the ARRB's operations, CIA, NARA, and the ARRB agreed that CIA would transmit a number of specifically identified documents to the JFK Collection at NARA, along with other non-duplicative assassination-related records created or discovered after that date. *Morley*, 508 F.3d at 1115 (citation omitted), citing the Memorandum of Understanding Regarding Continuing Obligations of the CIA Under the JFK Act ("MOU").

This Circuit has made it clear that the JFK Records Act and FOIA are separate statutory schemes with different standards and enforcement mechanisms. *Morley*, 508 F.3d at 1115; *Assassination Archives & Research Ctr. v. DOJ*, 43 F.3d 1542, 1544 (D.C. Cir. 1995); *see also* JFK Records Act § 11(b) ("Nothing in this Act shall be construed to eliminate or limit any right to file requests with any executive agency or seek judicial review of the decisions pursuant to section 552 of title 5, United States Code."). Further, this Circuit has held that no private right to initiate or maintain a cause of action under the JFK Records Act exists because the Act does not provide for a private right of action. *See Assassination Archives*, 43 F.3d at 1542–44 (holding that the "JFK Act does not create an implied private right of action for the release of documents and that the substantive standards for the release of documents under the JFK Act cannot be grafted onto FOIA's procedures"). And plaintiff acknowledges that the Act does not create a private cause of action. Pl.'s Opp. & Cross-Mem. at 27 ("[I]t is true that the JFK Act does not create a private cause of action . . . .").

Nonetheless, plaintiff insists that "[t]his action is not seeking to assert a private cause of action but is seeking review under Section 11(c) of the JFK Act which allows this Court to review final actions taken under the JFK Act" pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 *et. seq.* Pl.'s Opp. & Cross-Mem. at 27. He argues that "ARRB and NARA have

not observed the procedures required by the JFK Act in withholding the Lopez file from disclosure," *id.* at 28, and that "5 U.S.C. § 706(2)(D) requires th[e] Court to 'hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law.'" *Id.*, quoting 5 U.S.C. § 706(2)(D).

While Section 11(c) of the JFK Act does state that the Act does not "preclude judicial review" under the APA of "final actions taken or required to be taken under th[e] Act," JFK Act § 11(c), plaintiff did not bring a cause of action under the APA. *See generally* Am. Compl.[12] Nor does he seek judicial review of any final agency action taken pursuant to the JFK Records Act. *See id.*; *Assassination Archives*, 43 F.3d at 1544 (observing that Congress originally "preserved a role for courts in the form of review under the APA of 'final actions' under the Act," which included the review of the Board's decisions about assassination records and the President's review of the Board's decisions); *see also Morley*, 508 F.3d at 1115 (recognizing that "the MOU provides its own enforcement mechanisms for procuring relevant documents from the CIA").

Therefore, the Court will grant summary judgment in favor of defendants on Count III.

---

12    In his cross-reply, plaintiff contends that he has "pled an APA action under the liberal pleading rules" because he brought a claim "under the JFK Record Act which specifically incorporates the judicial review provisions of the APA." Pl.'s Cross-Reply at 10. However, plaintiff cites no authority for this proposition, and it would be inconsistent with Federal Rule of Civil Procedure 8(a)(1) and (2).

## CONCLUSION

For the foregoing reasons, the Court will grant defendants' motion in its entirety. A separate order will issue.

*[signature: Amy B. Jackson]*

AMY BERMAN JACKSON
United States District Judge

DATE: March 15, 2018